UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EULANDA FOX, TERRI LOVETT, DENNIS LOVETT, and NICOLE LOVETT, <br><br> Plaintiffs, <br><br> vs. <br><br> RENAL TREATMENT CENTERS-ILLINOIS, INC., d/b/a St. Louis Dialysis Center, <br><br> Defendant. | Case No. 4:18CV1608 JCH |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment, filed July 24, 2019. (ECF No. 11). The motion is fully briefed and ready for disposition.

## BACKGROUND

Plaintiffs allege that on or about October 7, 2016, Plaintiffs' Decedent[1], Barbara A. Brown, received a dialysis treatment at Defendant's facility. (Petition for Wrongful Death and Survival Action, ECF No. 5 ("Complaint" or "Compl."), ¶¶ 5, 9). According to Plaintiffs, Defendant failed to carry out post-hemodialysis site care, which led to prolonged bleeding of the left AV fistula, and failed to apply additional treatments to achieve hemostasis. (*Id.*, ¶¶ 9, 10). Plaintiffs claim that due to the prolonged bleeding, after returning home Decedent went into hypovolemic shock and subsequent cardiac arrest. (*Id.*, ¶¶ 11, 12). Plaintiffs maintain Decedent "went into PEA[2] arrest multiple times", and "went through massive blood transfusions and pressor supports in which she

---

1 Plaintiffs claim to be the children of Decedent, and thus the proper individuals to bring suit for her wrongful death. (Compl., ¶ 5).
2 "PEA" apparently refers to pulseless electric activity.

maxed out." (*Id.*, ¶¶ 13, 14). Plaintiffs allege Decedent died as a result of hemorrhagic shock, cardiogenic shock, STEMI, acute liver failure and cardiac arrest, and that said death was a direct result of Defendant's negligence. (*Id.*, ¶ 16). Specifically, Plaintiffs maintain Defendant: a) failed to use proper procedure for inserting the dialysis port; b) failed properly to monitor the fistula site after dialysis; c) failed to stop the bleeding at the fistula site; and d) failed properly to train and supervise the agents, employees, and servants of the corporate Defendant[] who were responsible for the treatment and care of Decedent. (*Id.*, ¶ 18).

On July 20, 2018, Plaintiffs filed a wrongful death and survival action against Defendant Renal Treatment Centers-Illinois, Inc. in the Circuit Court for the City of St. Louis, Missouri. Plaintiffs attached to their Complaint a Health Care Affidavit pursuant to Missouri Revised Statutes Section 538.225, in which Plaintiffs' attorney, Herman L. Jimerson, attests as follows:

> 2. That I have consulted with a qualified health care provider regarding the care given to the Plaintiffs' Decedent by the Defendant in this cause.
> 3. That the health care provider is a licensed registered nurse providing dialysis care to patients and/or disabled persons within the state of Missouri.
> 4. That the licensed health care provider is substantially in the same business as the Defendant and well qualified to give opinions regarding the rendering of Health Care to the population of people stated herein.
> 5. That the Health Care provider has given me her written opinion regarding the care given to Plaintiffs' decedent; and that that care is below what a reasonably prudent and careful health care provider would have done under the circumstances; and
> 6. That the failure to use such reasonable care directly caused or indirectly contributed to cause the damages claimed in the petition.
> 7. That the name of the Health Care provider is:
>    a) Ms. Kim Campbell, R.N.
>    b) 4319 Lindell Unit J, St. Louis MO 63108
> 8. That Ms. Campbell has been a licensed professional in excess of twenty-seven years and practiced in a substantially similar area as defendant for twelve (12) years.
> 9. That Ms. Campbell, R.N. reviewed the dialysis records, medical charts, and hospital records in excess of sixteen hours to arrive at her conclusion as stated above.

(ECF No. 1-6, PP. 10-11).

Defendant removed Plaintiffs' action to this Court on September 21, 2018, on the basis of diversity jurisdiction. (ECF No. 1). The Court entered a Case Management Order ("CMO") on November 30, 2018, which provided in relevant part as follows: "Plaintiff shall disclose all expert witnesses and shall provide the reports required by Rule 26(a)(2), Fed.R.Civ.P., no later than **May 30, 2019**, and shall make expert witnesses available for depositions, and have depositions completed, no later than **June 28, 2018** (sic)." (ECF No. 9, ¶ 3(b)).

Defendant served its First Set of Interrogatories on Plaintiffs on March 13, 2019. (Defendant's Statement of Uncontroverted Material Facts in Support of its Motion for Summary Judgment ("Defendant's Facts"), ¶ 17). Interrogatory Number 20 requested that Plaintiffs "[i]dentify each person by name, address, occupation, place of employment and qualifications to give an opinion, whom you have retained and expect to call as an expert witness with respect to any aspect of the suit and state the general nature of the subject matter on which the expert is expected to testify, and the expert's hourly fee. [The expert's curriculum vitae may be attached to the interrogatory answers in lieu of stating the qualifications of the expert to give an opinion if such information is available on the expert's curriculum vitae.]" (*See* ECF No. 13-10, PP. 2, 6, 10, 14). Plaintiffs responded to Interrogatory Number 20 as follows: "Plaintiff will supplement this response accordingly should an expert witness be retained." (*Id.*). Interrogatory Number 21 requested that Plaintiffs "[i]dentify each non-retained witness, including a party, whom you expect to call at trial who may provide expert witness opinion testimony by providing the expert's name, address, and field of expertise. State also any opinions the expert will testify to at trial." (*Id.*). Plaintiffs responded to Interrogatory Number 21 as follows: "Plaintiff will supplement this response accordingly should an (sic) non-retained witness be secured." (*Id.*) To date, Plaintiffs have not disclosed any experts or provided any expert reports to Defendant, nor have they produced any

experts for deposition. (Defendant's Facts, ¶¶ 23, 24, citing Exh. K, Affidavit of Counsel, M. Brendhan Flynn, ¶ 4). Plaintiffs further have not supplemented or amended and/or changed their answers to Defendant's Interrogatory Numbers 20-21, in which Plaintiffs expressly stated they had not retained a paid expert or secured a non-retained expert. (*Id.*, ¶ 25, citing Flynn Aff., ¶ 6).[2]

As stated above, Defendant filed the instant Motion for Summary Judgment on July 24, 2019, asserting Plaintiffs' Complaint must be dismissed for failure to provide expert testimony, as necessary to establish their wrongful death and survivor claims. (ECF No. 1).

### SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at

---

[2] Plaintiffs apparently have not asked Ms. Kim Campbell, R.N., to serve as an expert witness in this matter. In response to Defendant's motion, they state only that they would be disclosing a retained and non-retained expert. (*See* Plaintiffs' Response to Defendant's Statement of Facts, ¶¶ 20, 22).

247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Id.* at 249.

## DISCUSSION

In its Motion for Summary Judgment, Defendant asserts Plaintiffs' Complaint must be dismissed for failure to obtain an expert witness to testify on their behalf in this survivorship and wrongful death medical malpractice suit. In order to state a claim for medical malpractice under Missouri law, Plaintiffs must establish the following three elements: "(1) proof that an act or omission of the defendant failed to meet the requisite medical standard of care, (2) proof that the act or omission was performed negligently, and (3) proof of a causal connection between the act or omission and the injury sustained by the plaintiff." *Tompkins v. Kusama*, 822 S.W.2d 463, 464 (Mo. App. 1991) (internal quotation marks and citation omitted). Defendant maintains that in the absence of expert medical testimony, Plaintiffs can demonstrate neither the first element, that Defendant breached the standard of care in this case, nor the third element, that Defendant's allegedly negligent actions caused Plaintiffs' injury, *i.e.*, Decedent's death. Upon consideration, the Court agrees on both counts.[3]

With respect to the first element, the Court finds Plaintiffs present no expert testimony tending to demonstrate that Defendant's conduct constituted a departure from the standard of skill and proficiency expected of a dialysis provider under similar circumstances. *See Haase v. Garfinkel*,

---

3 In light of this conclusion, the Court need not consider Defendant's other arguments in favor of

418 S.W.2d 108, 112-113 (Mo. 1967). This omission is fatal to Plaintiffs' case. *Id.* In their response to Defendant's Motion for Summary Judgment, Plaintiffs argue they should be allowed to proceed without an expert, as "[t]he medical records and testimony from the treating physicians and witnesses can establish a strong, logically, traceable connection between the occurrence or lack of treatment at the dialysis center and events leading up to Decedent's death so that a layperson on a jury could decide probability." (*See* ECF No. 16, P. 5). Yet, as noted by Defendant, Plaintiffs provide no explanation as to how lay persons are expected to know the standard of care for the administration of facility-based hemodialysis. Therefore, in the absence of expert medical testimony, Plaintiffs cannot establish that Defendant breached the standard of care in its treatment of Decedent. *See Boehm v. Pernoud*, 24 S.W.3d 759, 761 (Mo. App. 2000) ("Generally, in a medical malpractice case, a plaintiff must introduce expert testimony to prove that the defendant failed to exercise the degree of skill and care ordinarily used under same or similar circumstances by members of his or her profession.").

With respect to the third element, causation, the Eighth Circuit has held as follows: "'When a party suffers a sophisticated injury, which requires surgical intervention or other highly scientific technique for diagnosis, proof of causation is not within a lay person's understanding and expert testimony is required.'" *Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 888 (8th Cir. 2006) (quoting *Echard v. Barnes-Jewish Hosp.*, 98 S.W.3d 558, 566 (Mo. App. 2002)). *See also Savage v. Christian Hospital Northwest*, 543 F.2d 44, 47 (8th Cir. 1976) ("[W]hen the causal relation issue is not one within the common knowledge of laymen, causation in fact cannot be determined without expert testimony."). Plaintiffs clearly allege sophisticated injuries leading to Decedent's death in this case, including hypovolemic shock, hemorrhagic shock, cardiogenic shock, STEMI, acute liver

---

summary judgment.

failure and cardiac arrest.[4]  These are not the type of injuries whose proof of causation is within the common knowledge of lay persons.  Under these circumstances, causation may not be presumed, and Plaintiffs were required to provide expert medical testimony to establish that Defendant's alleged negligence caused their injury.  *See Smith*, 436 F.3d at 888; *see also Wright v. Barr*, 62 S.W.3d 509, 525 (Mo. App. 2001) (Here, given the nature of the facts underlying respondents' causes of action, expert medical testimony was clearly needed to show the elements of their claims.").

In their response to Defendant's motion, Plaintiffs state "the discovery deadline set for this case is September 30, 2019 which will allow for Plaintiff[s] to produce their expert witness and make available for depositions prior to the deadline." (*See* ECF No. 16, P. 3).  While Plaintiffs are correct that the deadline for the parties to complete *all* discovery in this matter was September 30, 2019, *see ECF No.* 9, ¶ 3(f), they fail to mention that the CMO also provides as follows:  "Plaintiff shall disclose all expert witnesses and shall provide the reports required by Rule 26(a)(2), Fed.R.Civ.P., no later than **May 30, 2019**, and shall make expert witnesses available for depositions, and have depositions completed, no later than **June 28, 2018** (sic)."  (*Id.*, ¶ 3(b)).

Federal Rule of Civil Procedure 16(b)(4) provides that CMOs "may be modified only for good cause and with the judge's consent."  "Thus, a moving party must first make the requisite showing," and even then, "the district court retains discretion as to whether to grant the motion."  *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001).

"The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements."  *Bradford*, 249 F.3d at 809 (citation omitted).  Here, the record clearly demonstrates that Plaintiffs made little or no effort to satisfy the

---

4 As stated above, Plaintiffs claim these conditions resulted from, among other things, Defendant's failure to carry out post-hemodialysis site care, and failure to apply additional treatments to achieve hemostasis.

CMO's requirements with respect to the disclosure of expert witnesses. *Id*. As noted by Defendant, Plaintiffs first filed suit against Defendant for Decedent's death in October, 2017. (*See* Case No. 4:17CV2729 JCH, ECF No. 4). After Defendant filed a Motion to Dismiss for failure to file the required healthcare affidavit under Mo.Rev.Stat. § 538.225, Plaintiffs voluntarily dismissed the suit on April 12, 2018. (*See* Case No. 4:17CV2729, ECF Nos. 15, 16). Plaintiffs then filed the instant suit on July 20, 2018, with the healthcare affidavit attached, but neglected to disclose an expert within the timeframe imposed by the CMO (which was entered nearly a year ago, on November 30, 2018). Plaintiffs thus have had ample opportunity to locate and designate an expert witness, and they offer no excuse for their failure to do so, much less good cause. Under these circumstances, the Court will not modify its CMO to permit Plaintiffs to name an expert at this late date. Plaintiffs thus are left without expert medical testimony to support their survivorship and wrongful death claims, and so Defendant's Motion for Summary Judgment must be granted.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED that** Defendant Renal Treatment Centers-Illinois, Inc.'s Motion for Summary Judgment (ECF No. 11) is **GRANTED**, and Plaintiffs' claims are **DISMISSED**. An appropriate Judgment will accompany this Memorandum and Order.

Dated this 1st Day of October, 2019.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE